Arthur SMELT, et al., Plaintiffs,

v.

COUNTY OF ORANGE,
et al., Defendants.

No. SACV04–1042–GLT(MLGX).

United States District Court,
C.D. California,
Southern Division.

June 16, 2005.

Byron J. Babione, Esq., Benjamin W. Bull, Esq., Glen Lavy, Esq., Dale Schowengerdt, Esq., Alliance Defense Fund, Scottsdale, AZ, Sam Kim, Esq., Sam Kim & Associates, Buena Park, CA, for Karen Dean Milam, Esq., Yucaipa, CA, Michael L. Parker, Esq., Sam Kim & Associates, Buena Park, CA, for (Intervenor Plaintiff) Proposition 22 Legal Defense and Education Fund.

Stephen V. Bomse, Esq., Richard DeNatale, Esq., Heller, Ehrman, White & McAuliffe, San Francisco, CA, Jon W. Davidson, Esq., Lambda Legal Defense & Education Fund, Los Angeles, CA, Courtney G. Joslin, Esq., Shannon Minter, Esq., National Center for Lesbian Rights, San Francisco, CA, Jennifer C. Pizer, Esq., Lambda Legal Defense & Education Fund, Los Angeles, CA, for Woo v. Lockyer.

Richard C. Gilbert, Esq., Diane J. Marlowe, Esq., Gilbert & Marlowe, Santa Ana, CA, for Arthur Bruno Smelt.

Law Offices of Ross S. Heckmann, Esq., Arcadia, CA, Rena M. Lindevaldsen, Esq., Mary E. McAlister, Esq., Liberty Counsel, Longwood, FL, for (Intervenor Plaintiff) Campaign for California Families.

Chandra Miller Fienen, Esq., Amy E. Margolin, Esq., Bobbie J. Wilson, Esq.,

Howard, Rice, Nemerovski Canady, Falk and Rabkin, San Francisco, CA, Sherri Sokeland Kaiser, Esq., San Francisco City Attorney, San Francisco, CA, for San Francisco City and County.

Christopher E. Krueger, Esq., Hiren M. Patel, Esq., CAAG—California Attorney General Office, Sacramento, CA, for Michael Rodrian.

Teri L. Maksoudian, Esq., Marianne Van Riper, Esq., Orange County Counsel, Santa Ana, CA, for Defendant, County Clerk.

W. Scott Simpson, Esq., U.S. Department of Justice, Civil Div—Federal Programs Branch, Washington, DC, for Intervenor Defendant, USA.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT; JUDGMENT

TAYLOR, District Judge.

In a federal constitutional challenge to same-sex marriage limitations, the Court holds (1) it is a proper exercise of discretion for federal courts to abstain from deciding the constitutionality of state "man-woman marriage" statutes until the state court review process is completed, and (2) section 3 of the federal Defense of Marriage Act is constitutional.

### I. BACKGROUND

This suit tests the constitutionality of California's man-woman marriage laws and the federal Defense of Marriage Act. The facts are agreed. Each of the Plaintiffs is an adult male, desiring and intending to enter into a civil marriage with each other in the State of California. In February 2004, and again in March 2004, Plaintiffs applied for a marriage license from the County Clerk, Orange County, California. On both occasions, the Clerk refused to issue a marriage license because Plaintiffs are of the same sex. In all other respects, Plaintiffs meet the qualifications for issuance of a marriage license. Earlier, in 2000, Plaintiffs applied for and received a Declaration of Domestic Partnership from the State of California.

Plaintiffs sued the County of Orange and the Orange County Clerk (collectively "County Defendants") and the State Registrar of Vital Statistics and California Department of Health Services (collectively "State Defendants"). Plaintiffs contend California Family Code sections 300,[1] 301,[2] and 308.5[3] violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the U.S. Constitution, Plaintiffs' right to privacy, the First Amendment, the Ninth Amendment, and the right to travel. Plaintiffs further allege section 308.5 violates the Full Faith and Credit Clause of the U.S. Constitution.

Plaintiffs also challenge the federal Defense of Marriage Act ("DOMA").[4] They

1. "Marriage is a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary. Consent alone does not constitute marriage. Consent must be followed by the issuance of a license and solemnization as authorized by this division, except as provided by Section 425 and Part 4 (commencing with Section 500)." Cal. Fam.Code § 300 (West 2004).

2. "An unmarried male of the age of 18 years or older, and an unmarried female of the age of 18 years or older, and not otherwise disqualified, are capable of consenting to and consummating marriage." Cal. Fam.Code § 301 (West 2004).

3. "Only marriage between a man and a woman is valid or recognized in California." Cal. Fam.Code § 308.5 (West 2004).

4. Defense of Marriage Act, 1 U.S.C. § 7 (2005), 28 U.S.C. § 1738C (Supp.2005).

assert section 2[5] of DOMA violates the Full Faith and Credit Clause of the U.S. Constitution, and section 3[6] violates the Equal Protection and Due Process Clauses of the U.S. Constitution and Plaintiffs' right to privacy.

The United States of America intervened at this Court's invitation pursuant to 28 U.S.C. § 2403(a). The Court also allowed the Proposition 22 Legal Defense and Education Fund and the Campaign for California Families to intervene as Defendants.[7]

The parties agree there is no genuine issue of material fact to be tried. All parties filed cross-motions for summary judgment on the legal issues presented. A motion was also made for the Court to abstain on the state statutory issues.

## II. *DISCUSSION*

The sensitive legal and political issue of same-sex marriage in this country is developing rapidly. This case tests the constitutionality of California's marriage laws under the federal Constitution and the constitutionality of the federal DOMA.

### A. *The California Statutes—Federal Abstention*

■ The State Defendants filed a motion for this Court to abstain and stay the part of the case challenging the California statutes pending resolution of the *Marriage Cases*, a consolidated proceeding of six cases in California state court. *See supra* note 7. The *Marriage Cases* challenge California Family Code sections 300, 301, and 308.5 under the California state constitution.[8] The trial court's decision will apparently eventually reach the California Supreme Court. The Court concludes abstention is appropriate.

■ Under the abstention doctrine articulated in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), this Court should postpone the exercise of jurisdiction "when 'a federal constitutional issue ... might be mooted or presented in a different posture

5. "No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship." 28 U.S.C. § 1738C (Supp. 2005).

6. "In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." 1 U.S.C. § 7 (2005).

7. The Court received amicus curiae briefs from the City and County of San Francisco and the plaintiffs in *Woo v. Lockyer*, one of the cases consolidated into the coordinated proceeding in California state court, *Coordination Proceeding, Special Title [Rule 1550(c)]*, *Marriage Cases*, Judicial Council Coordination Proceeding No. 4365, slip op. (Cal.Super.Ct. Apr. 13, 2005) (tentative decision at 2005 WL 583129 (Cal.Super. Mar. 14, 2005)) [hereinafter *Marriage Cases*]. The Court's editorial coordinator was Erin Smith.

8. The trial court decision in the *Marriage Cases* held only Family Code sections 300 and 308.5 are unconstitutional under the state constitution. *Marriage Cases*, slip op. at *1–2, 2005 WL 583129, at *1. It appears the court interpreted section 301 as designating the minimum age to get married, but not as prohibiting same-sex marriages. *Marriage Cases*, slip op. at *11, 2005 WL 583129, at *5 (stating the perceived ambiguity in the language of section 301 as to whether it prohibits same-sex marriages led to the passage of section 300). The court apparently did not find section 301 raised any constitutional issues.

by a state court determination of pertinent state law.'" *C-Y Dev. Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1983) (omission in original) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).[9]

■ *Pullman* abstention is a narrow exception to this Court's "duty to decide cases properly before it." *Id.* The doctrine exists to avoid collision between federal courts and state legislatures and to prevent premature determination of constitutional issues. *Porter v. Jones,* 319 F.3d 483, 492 (9th Cir.2003); *San Remo Hotel v. City & County of San Francisco,* 145 F.3d 1095, 1101 (9th Cir.1998) ("[O]ur precedents require abstention in order to avoid an unnecessary conflict between state law and the federal Constitution."); *see also Arizonans for Official English v. Arizona,* 520 U.S. 43, 79, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court."). Abstention is designed to respect "'the rightful independence of the state governments'" and to enable "the smooth working of the federal judiciary." *Pullman,*

312 U.S. at 501, 61 S.Ct. 643 (quoting *Di Giovanni v. Camden Fire Ins. Ass'n,* 296 U.S. 64, 73, 56 S.Ct. 1, 80 L.Ed. 47 (1935)). In order to respect a plaintiff's choice of forum, *Pullman* abstention should rarely be applied. *Porter,* 319 F.3d at 492.

■ *Pullman* abstention is appropriate when:

"(1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain."

*Id.* (alteration omitted) (quoting *Confederated Salish v. Simonich,* 29 F.3d 1398, 1407 (9th Cir.1994)).

### 1. Sensitive Area of Social Policy

An important *Pullman* element is whether the case involves a sensitive area of social policy best left to the states to address. *Fireman's Fund Ins. Co. v. City of Lodi,* 302 F.3d 928, 939 (9th Cir.2002); *see also In re Eastport Assocs.,* 935 F.2d 1071, 1078 (9th Cir.1991) ("[T]he predominance of particularly sensitive state law issues should weigh in favor of abstention."); *Almodovar v. Reiner,* 832 F.2d

9. A dismissal or stay pursuant to *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), would not apply here. *Colorado River* applies when there is parallel litigation in a federal and state court. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 28, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious

abuse of discretion to grant the stay or dismissal at all."). Federal and state cases are parallel if they are "substantially similar." *Nakash v. Marciano,* 882 F.2d 1411, 1416 (9th Cir.1989) (citations omitted).

This case and the California state court *Marriage Cases* are not substantially similar. The cases involve different parties. Although both cases challenge the same state statutes, this case challenges them under the U.S. Constitution, while the *Marriage Cases* challenge them under the California state constitution. The *Marriage Cases* will not decide the federal constitutional issues raised in this case.

101138, 1140 (9th Cir.1987) (finding the first *Pullman* element "protects state sovereignty over matters of local concern"). When a sensitive area of social policy is at issue, abstention may be appropriate.

Here, the California state statutes touch an important and sensitive area of a social institution particularly within the province of a state. While federal constitutionality of the state statutes is a federal question appropriate for federal court adjudication, the underlying statutes relate to California's definition of and recognition of the institution of marriage. "[M]arriage is a social relation subject to the State's police power ...." *Loving v. Virginia,* 388 U.S. 1, 7, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *see also Sosna v. Iowa,* 419 U.S. 393, 404, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (stating regulation of domestic relations is "an area that has long been regarded as a virtually exclusive province of the States"); *Pennoyer v. Neff,* 95 U.S. 714, 734–35, 5 Otto 714, 24 L.Ed. 565 (1877) ("The State ... has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created ...."), *overruled on other grounds by Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

DOMA implicitly recognizes regulation of marriage is a state issue. Section 2 of DOMA provides states do not have to give effect to a marriage "under the laws of such other State." 28 U.S.C. § 1738C (Supp.2005). This acknowledges the laws of the states—not the federal government—govern marriage. While federal law provides certain rights and responsibilities to married individuals, how those individuals become married is a matter of state law. This is true in California as in other states. *See, e.g., Lockyer v. City & County of San Francisco,* 33 Cal.4th 1055, 1074, 17 Cal.Rptr.3d 225, 95 P.3d 459 (2004) ("It is well settled in California that 'the Legislature has full control of the subject of marriage and may fix the conditions under which the marital status may be created or terminated ....'") (omission in original) (quoting *McClure v. Donovan,* 33 Cal.2d 717, 728, 205 P.2d 17 (1949)). California Family Code sections 300, 301, and 308.5 involve a sensitive area of social policy best left to the state.

■ It is argued this case involves a First Amendment challenge for violation of free association and free expression from which the Court should not abstain. When a case involves an area of particular federal concern, or when the federal courts are particularly well-suited to hear the case, *Pullman* abstention is not appropriate. *Porter,* 319 F.3d at 492. First Amendment questions are issues of particular federal concern from which a federal court normally should not abstain. *Id.* However, "there is no absolute rule against abstention in first amendment cases." *Almodovar,* 832 F.2d at 1140. An important consideration in deciding whether to abstain from a First Amendment challenge is whether abstention will chill the exercise of protected activities. *Porter,* 319 F.3d at 492–93.

Here, postponing federal jurisdiction on the First Amendment question poses little danger of chilling protected activity. It is not readily apparent obtaining a marriage license is protected First Amendment activity. *See, e.g., Baker v. Nelson,* 291 Minn. 310, 191 N.W.2d 185, 186 n. 2 (1971) (dismissing without discussion petitioners' claim that state laws prohibiting same-sex marriage violated the First Amendment), *appeal dismissed on other grounds,* 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972); *Goodridge v. Dep't of Pub. Health,* 14 Mass. L. Rptr. 591, 2002 WL 1299135, at *12 (Mass.Super.2002) (stating issuing a marriage license is speech by the government, not protected speech by individuals), *rev'd on other grounds,* 440 Mass. 309, 798

N.E.2d 941 (2003).[10] Cases where it was not appropriate for federal courts to abstain from First Amendment questions involved activities more clearly within the protections of the First Amendment than this issue. *See, e.g., Porter,* 319 F.3d at 487–89 (considering a website with a discussion forum and written information on the electoral college, a presidential election, and voting).

The California *Marriage Cases* are well under way in state court. They are past the trial level and apparently will be appealed to the California Supreme Court. The Ninth Circuit has found, in this situation, abstention from a First Amendment question may be appropriate because the fear of chilling protected First Amendment activity is not present. *See Almodovar,* 832 F.2d at 1140 (holding abstention was appropriate even on a First Amendment issue because the state case was already before the California Supreme Court); *see also Porter,* 319 F.3d at 493–94 (reaffirming *Almodovar* ).

The constitutionality of the state statutes under the state constitution can be resolved in the single *Marriage Cases* proceeding. There will be no need to file additional cases to resolve the issues. This weighs in favor of abstention. *Almodovar,* 832 F.2d at 1140 (finding abstention from a First Amendment question appro-

priate when a single, already-pending state case may resolve the issues presented). Abstention by this Court will not cause undue expense or delay in the ultimate resolution of the constitutionality of the state statutes under either the state or the federal Constitution. Postponing federal consideration of the federal constitutional challenges will avoid a premature determination of a constitutional question and a potentially unnecessary conflict between the state legislature and the federal court.

### 2. *Avoidance of Constitutional Adjudication*

If there is a decision by the California Supreme Court that the state statutes violate the California constitution, it would resolve the California statutory issue, making unnecessary a decision whether the statutes also violate the federal Constitution. *See Columbia Basin Apartment Ass'n v. City of Pasco,* 268 F.3d 791, 802 (9th Cir.2001) ("[I]nterpretation of the validity of [a city ordinance] under the Washington Constitution may eliminate the need to determine whether it also violates the federal Constitution."). It is appropriate for the Court to abstain in this situation. *Reetz v. Bozanich,* 397 U.S. 82, 86–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) (finding the district court should have abstained when a state court ruling on a

---

**10.** The recent Nebraska federal case *Citizens for Equal Protection, Inc. v. Bruning* is not to the contrary. 368 F.Supp.2d 980, 984–85 (D.Neb.2005). There, the court found a state constitutional provision much broader than the statutes in this case violated the First Amendment's protections of free association and the right to petition the government for redress of grievances. *Id.* at 989–998. The state constitutional provision in *Bruning* prohibited same-sex marriages as well as same-sex civil unions, domestic partnerships, and other similar same-sex relationships. *Id.* at 984–85. The breadth of the constitutional provision was significant in the court's analysis. *Id.* at 995 ("The amendment goes far beyond

merely defining marriage as between a man and a woman."). The California statutes in this case are limited to marriage, and other state provisions permit domestic partnerships. Cal. Fam.Code §§ 297–299.6 (West 2004 & Supp.2005). *Bruning's* holding is not applicable here.

*But see* David B. Cruz, *"Just Don't Call It Marriage": The First Amendment and Marriage as an Expressive Resource,* 74 S. Cal. L.Rev. 925 (2001) (arguing denying same-sex couples access to the expressive resource of marriage violates the First Amendment's proscriptions against viewpoint- and content-based discrimination).

state statute under the state constitution "could conceivably avoid any decision" under the federal Constitution); *San Remo Hotel*, 145 F.3d at 1105 (reversing district court's refusal to abstain when a state court's decision on the meaning of municipal zoning laws would moot the federal constitutional claim).

### 3. Uncertain Resolution of State Law

The eventual outcome in the California Supreme Court in the *Marriage Cases* is uncertain. "Uncertainty for purposes of *Pullman* abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law." *Pearl Inv. Co. v. City & County of San Francisco*, 774 F.2d 1460, 1465 (9th Cir.1985). Resolution of an issue of state law may be uncertain when "the question is novel and of sufficient importance that it ought to be addressed first by a state court." *Id.; see also Columbia Basin Apartment Ass'n*, 268 F.3d at 806 (stating uncertainty exists when the law at issue has not been interpreted by a state court under the particular state constitutional provision).

Here, the state statutes have not yet been considered on these issues by the California Supreme Court under the state constitution. This weighs in favor of abstention.

Abstention would not be necessary if the state constitution had parallel provisions to the federal Constitution. *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 237 n. 4, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Columbia Basin Apartment Ass'n*, 268 F.3d at 806 (citing authorities). When this is the case, it is easier for a federal court to predict how the state's highest court will decide the issue of state law. However, when the state constitutional provision "differs significantly" from the federal Constitution, abstention is "particularly appropriate." *Columbia Basin Apartment Ass'n*, 268 F.3d at 806.

The California constitution differs significantly from the federal Constitution on the issues involved in this case. The California constitution has a right to privacy clause.[11] The federal Constitution does not, but federal courts have interpreted the Constitution to include a right of privacy. "[I]n many contexts, the scope and application of the state constitutional right of privacy is broader and more protective of privacy than the federal constitutional right of privacy as interpreted by the federal courts." *Am. Acad. of Pediatrics v. Lungren*, 16 Cal.4th 307, 326, 66 Cal. Rptr.2d 210, 940 P.2d 797 (1997). The equal protection and due process clauses of the state and federal constitutions are worded similarly.[12] However, California courts have construed the state clauses more broadly than federal courts have construed the federal clauses.[13]

11. "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art I, § 1.

12. *Compare* Cal. Const. art. I, § 7(a) ("A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws ...."), *with* U.S. Const. amend. XIV, § 1 ("No state shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal pro-

tection of the laws."), *and* U.S. Const. amend. V ("No person shall ... be deprived of life, liberty, or property, without due process of law ....").

13. For example, although it is not clearly established whether sexual orientation is a suspect classification entitled to heightened scrutiny under California equal protection doctrine, at least one state court has suggested it is. *See Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal.App.4th 740, 118 Cal.Rptr.2d 629, 650 (2002) (identifying sexual orientation as an example of a suspect classification for purposes of equal protection analysis). Under federal law, it is clear sexual orientation

The differences between California and federal constitutional principles, and the fact the state's highest court has not yet considered the constitutionality of the state statutes, show the final resolution of the *Marriage Cases* is uncertain.

#### 4. *Appropriateness of Abstention*

The question of the constitutionality of California's statutory prohibition on same-sex marriage is novel and of sufficient importance that the California courts ought to address it first. In order to give California courts the first opportunity to evaluate the constitutionality of California statutes under the California constitution, this Court will exercise its discretion to abstain for now from deciding whether the state statutes violate the federal Constitution. *See Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) (stating abstention is "a discretionary exercise of a court's equity powers").

#### B. *The Federal DOMA—Constitutionality*

Plaintiffs contend the federal Defense of Marriage Act is unconstitutional. The Court concludes Plaintiffs do not have standing to contest section 2, but they do have standing as to section 3. The Court determines section 3 of DOMA is constitutional.

#### 1. *Standing*

■ Defendants contend Plaintiffs do not have standing to challenge section 2 of DOMA, which provides, in part: "No State ... shall be required to give effect to any public act, record, or judicial proceeding of any other State ... respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State ... or a right or claim arising from such relationship." 28 U.S.C. § 1738C.

There are three requirements to establish standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of .... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*United States v. Hays,* 515 U.S. 737, 742–43, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Plaintiffs, as the parties seeking the exercise of federal jurisdiction, have the burden of showing they have standing. *Id.* at 743, 115 S.Ct. 2431.

Plaintiffs have not shown they have standing to challenge section 2 of DOMA. They have not shown what "injury in fact" they have suffered as a result of the statute. Plaintiffs do not have a relationship "treated as a marriage" in any state. Plaintiffs are registered domestic partners

---

is not a suspect or quasi-suspect class, and federal equal protection jurisprudence subjects sexual orientation classifications to rational basis review. *Romer v. Evans,* 517 U.S. 620, 632–33, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (applying rational basis review to state law creating sexual orientation classification). In California, sex-based classifications receive strict scrutiny. *Catholic Charities of Sacramento, Inc. v. Superior Court,* 32 Cal.4th 527, 564, 10 Cal.Rptr.3d 283, 85 P.3d 67 (2004)

("[D]iscrimination based on gender violates the equal protection clause of the California Constitution (art. I, § 7(a)) and triggers the highest level of scrutiny."). Under federal law, sex-based classifications are subject to intermediate scrutiny. *E.g., Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) ("[C]lassifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.").

in California, but California does not treat domestic partnerships as "marriages." Marriages and domestic partnerships "are different legal relationships." *Knight v. Superior Court*, 128 Cal.App.4th 14, 26 Cal.Rptr.3d 687, 693 (2005). The separate statutory schemes for domestic partnerships and marriages are not coextensive. *Compare* Cal. Fam.Code §§ 297–299.6 (West 2004 & Supp.2005) (domestic partnerships), *with id.* §§ 300–2452 (marriages).[14] Plaintiffs also do not have a marriage in Massachusetts.[15] Because they lack a relationship treated as a marriage in any state, Plaintiffs are not injured by the fact section 2 permits states to choose not to give effect to other states' same-sex marriages.

Plaintiffs also have not shown they will suffer an imminent injury as a result of section 2. They do not claim to have plans or a desire to get married in Massachusetts or elsewhere and attempt to have the marriage recognized in California. They do not claim to have plans to seek recognition of their eventual California marriage in another state. Without definite plans to engage in an act that will cause them to suffer an injury in fact, Plaintiffs have not established an imminent injury sufficient to confer standing to challenge section 2. *Lujan*, 504 U.S. at 564, 112 S.Ct. 2130 (finding "concrete plans" to return to the place where the injury is suffered is required to show imminence for standing purposes).

Under the facts of this case, Plaintiffs do not have standing to challenge section 2 of DOMA.

■ There is also a question whether Plaintiffs have standing to challenge section 3 of DOMA, which states, for purposes of federal laws and regulations, "the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." 1 U.S.C. § 7 (2005).

Plaintiffs are registered domestic partners in California, which is a "legal union" recognized by the state. For purposes of federal law, DOMA defines "marriage" as a legal union between one man and one woman. Plaintiffs' legal union is excluded from the federal definition of marriage because it is not between a man and a woman. Because of DOMA's definition, Plaintiffs' legal union cannot receive the rights or responsibilities afforded to marriages under federal law. This is a concrete injury personally suffered by Plaintiffs, caused by DOMA's definition of marriage. The United States concedes, and the Court agrees, Plaintiffs have standing to challenge section 3.[16]

14. For example, domestic partnerships do not receive the same state tax benefits as marriages. Cal. Fam.Code § 297.5(g); *see also Knight*, 26 Cal.Rptr.3d at 699–700 (listing statutory and other differences between domestic partnerships and marriages in California).

15. At present, Massachusetts is the only state that gives marriage licenses to same-sex couples.

16. A previous decision in this District supports the position Plaintiffs have standing to challenge section 3. In *Adams v. Howerton*, two male plaintiffs received a marriage license and completed a marriage ceremony in Colorado. 486 F.Supp. 1119, 1120 (C.D.Cal. 1980). The court held, under both Colorado and federal law, plaintiffs were not married. *Id.* at 1123–24. The court went on to consider whether this definition of marriage as between a man and a woman violated federal constitutional principles of equal protection and due process. *Id.* at 1124–25. The court did not discuss whether plaintiffs, as non-married individuals, had standing to raise the constitutional challenge. Either the court concluded plaintiffs had standing or it did not consider the issue, but in either case the court reached the merits of the constitutional challenge. The Ninth Circuit affirmed, but not on the constitutional grounds. *Adams v. Howerton*, 673 F.2d 1036, 1038–39, 1039 n. 2 (9th

## 2. Effect of Baker v. Nelson

The parties dispute whether the U.S. Supreme Court's 1972 dismissal for want of substantial federal question in *Baker v. Nelson*, 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972), is binding on the issues presented in this case. *Baker v. Nelson* came to the Supreme Court on appeal from the Minnesota Supreme Court. 291 Minn. 310, 191 N.W.2d 185 (1971). The Minnesota court found state laws prohibiting same-sex marriage did not violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment. *Id.* at 186–87. Under the Supreme Court's then-mandatory appellate jurisdiction,[17] it dismissed the appeal for want of substantial federal question.

■ A dismissal for want of substantial federal question is a decision on the merits that is binding on lower courts. *Hicks v. Miranda*, 422 U.S. 332, 344–45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). The scope of the rule is narrow, however. It is dispositive only of "the specific challenges presented in the statement of jurisdiction." *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977) (per curiam). It prevents "lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided" by the dismissal, but it does not affirm the reasoning or the opinion of the lower court whose judgment is appealed. *Id.; Washington v. Confederated Bands & Tribes*, 439 U.S. 463, 476 n. 20, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979). It remains a decision on the merits of the precise questions presented " 'except when doctrinal developments indicate otherwise.' " *Hicks*, 422 U.S. at 344, 95 S.Ct. 2281 (quoting *Port Auth. Bondholders Protective Comm. v. Port of N.Y. Auth.*, 387 F.2d 259, 26[2] n. 3 (2d Cir.1967)).

■ The jurisdictional statement in *Baker v. Nelson* presented the questions of whether the county clerk's refusal to authorize a same-sex marriage deprived plaintiffs of their liberty to marry and of their property without due process of law under the Fourteenth Amendment, their rights under the Equal Protection Clause of the Fourteenth Amendment, or their right to privacy under the Ninth and Fourteenth Amendments. *Baker v. Nelson*, Jurisdictional Statement, No. 71–1027 (Oct. Term 1972).

Plaintiffs here challenge DOMA under the same constitutional principles presented in *Baker*: due process, equal protection, and the right to privacy. But here, Plaintiffs challenge a different type of statute. The Minnesota laws in *Baker* prescribed the type of relationship the county could sanctify as a marriage—that is, who could get a marriage license. DOMA does not address what relationships states may recognize as marriages. It leaves that decision to the states. *See In re Kandu*, 315 B.R. 123, 132 (Bankr.W.D.Wash.2004) (concluding DOMA's definition of marriage

Cir.1982). It also did not address plaintiffs' standing.

Also, an Oregon state court in an unpublished opinion held same-sex couples without marriage licenses had standing to challenge state laws limiting marriage to opposite-sex couples under the state constitution. *Li v. State*, No. 0403–03057, 2004 WL 1258167, at *2–3 (Or.Cir.Ct. Apr. 20, 2004), *rev'd on other grounds by* 338 Or. 376, 110 P.3d 91 (2005) (en banc). Under Oregon's standing rules, plaintiffs had to show the court's decision

would have a practical effect on them. *Id.* at *2. The court held its decision would have a practical effect and allowed plaintiffs to bring their constitutional challenge. *Id.* at *3. Oregon's practical effect requirement appears to be similar to federal standing rules requiring an injury in fact, causation, and redressability.

**17.** Until 1988, the Supreme Court had mandatory appellate jurisdiction under 28 U.S.C. § 1257(2) (repealed 1988).

is not binding on states, and the determination of who may marry is an exclusive function of state law. Instead, DOMA defines who will receive the federal rights and responsibilities of marriage. This issue of allocating benefits is different from the issue of sanctifying a·relationship presented in *Baker's* jurisdictional statement.

DOMA is a relatively new law reflecting new interests and its own legislative history. These interests must be considered in an equal protection and due process analysis, but they were not before the Minnesota Supreme Court or the U.S. Supreme Court at the time of *Baker*. It is doubtful the U.S. Supreme Court will hold *Baker* is binding on whether these new interests pass constitutional muster.

The difference between DOMA and the state statutes in *Baker* is relatively minor, and the governmental interests advanced by each may be similar. However, it cannot be determined whether these differences have constitutional significance until the Court reaches the merits of this case. The Court must consider the precise questions presented by this case and cannot conclude *Baker* "necessarily decided" the questions raised by the constitutional challenge to DOMA. *See Mandel,* 432 U.S. at 176, 97 S.Ct. 2238 (stating summary dismissals are binding only as to the "precise issues presented and necessarily decided"); *Ill. State Bd. v. Socialist Workers Party,* 440 U.S. 173, 182–83, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979) ("[N]o more may be read into our [summary dismissal] than was essential to sustain that judgment."); *Adams v. Howerton,* 486 F.Supp. 1119, 1124 (C.D.Cal.1980) (stating *Baker* is binding as to whether state laws prohibiting same-sex marriages are constitutional, but implicitly finding *Baker* is not binding on whether a federal statutory definition of

"spouses" is constitutional); *In re Kandu,* 315 B.R. at 137–38 (finding the difference between·DOMA and the state laws in *Baker* is. one reason *Baker* is not binding on the question of DOMA's constitutionality).[18]

Doctrinal developments show it is not reasonable to conclude the questions presented in· the *Baker* jurisdictional statement would still be·viewed by the Supreme Court as "unsubstantial." *See Hicks,* 422 U.S. at 344, 95 S.Ct. 2281 (" '[I]f the Court has branded a·question as unsubstantial, it remains so except when doctrinal developments indicate otherwise' ...." ) (quoting *Port Auth. Bondholders Protective Comm.,* 387 F.2d at 262 n. 3). Supreme Court cases decided since *Baker* show the Supreme Court does not consider unsubstantial a constitutional challenge brought by homosexual individuals on equal protection grounds, *Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), or on due process grounds, *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). It seems unlikely the Supreme Court would bypass the rational basis analysis prescribed in *Romer* by relying on the binding effect of *Baker*.

Plaintiffs also allege DOMA contains a sex-based classification. Although a sex-based classification was. first recognized one year before *Baker* in *Reed v. Reed,* 404 U.S. 71, 75–77, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (finding an automatic preference ·of men over women to administer decedents' estates violates equal protection), the concept did not fully develop until later. *See, e.g., United States v. Virginia,* 518 U.S. 515, 532, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (stating the Supreme Court's post-*Reed* decisions "carefully inspected official action that closes a

---

18. The Court disagrees with *Wilson v. Ake's* finding a constitutional challenge to DOMA presents the "same issues" as *Baker v. Nelson.* 354 F.Supp.2d 1298, 1304–05 (M.D.Fla.2005). *Wilson* did not explain what issues it found to be the same.

door or denies opportunity to women (or to men)"). Also, the application of the intermediate—or "heightened"—scrutiny standard to sex-based classifications came after *Baker.* *See, e.g., id.* (noting post-*Reed* decisions developed the intermediate scrutiny standard); *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (articulating the intermediate scrutiny standard for the first time five years after *Baker* ). It is unlikely *Baker,* decided before these concepts developed, could be held to be binding precedent on these issues.

The Court concludes *Baker v. Nelson* is not binding precedent on Plaintiffs' constitutional challenge to section 3 of DOMA.[19]

### 3. *Equal Protection*

Plaintiffs argue the federal DOMA violates their equal protection rights under the Fifth Amendment. The first step of analysis of the merits of an equal protection claim is to "determine what classification has been created." *Aleman v. Glickman,* 217 F.3d 1191, 1195 (9th Cir.2000). Plaintiffs assert DOMA creates a sexual orientation classification and a sex-based classification.

### a. *Sexual Orientation Classification*

■ Where there has been a claimed sexual orientation classification, several courts have proceeded to equal protection review without first stating why the laws create a sexual orientation classification. *See, e.g., Wilson v. Ake,* 354 F.Supp.2d 1298, 1308 (M.D.Fla.2005) (DOMA); *In re Kandu,* 315 B.R. at 143–44 (DOMA); *Hernandez v. Robles,* 7 Misc.3d 459, 794 N.Y.S.2d 579, 604–05 (2005) (state statutes); *Standhardt v. Superior Court ex rel. County of Maricopa,* 206 Ariz. 276, 77 P.3d 451, 464 (2003). This Court finds it is necessary first to state clearly whether DOMA creates a sexual orientation classification before conducting equal protection review of it.

On its face, DOMA does not classify based on sexual orientation. It states, " 'marriage' means only a legal union between one man and one woman." 1 U.S.C. § 7. It does not mention sexual orientation or make heterosexuality a requirement for obtaining federal marriage benefits. However, equal protection analysis is not invoked only by a facial classification. A facially neutral law may be subjected to equal protection scrutiny if its disproportionate effect on a certain class reveals a classification. *Pers. Adm'r v. Feeney,* 442 U.S. 256, 275, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *see also Standhardt,* 77 P.3d at 464. If a law is designed to benefit one class over another, it must withstand equal protection scrutiny. *See Feeney,* 442 U.S.

---

**19.** This view is not inconsistent with *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). That case held it was improper for a lower court to refuse to follow a Supreme Court opinion because it believed later Supreme Court decisions reduced its reasoning to "obsolescense." *Id.* at 479, 484, 109 S.Ct. 1917. It stated lower courts are not free to disregard Supreme Court opinions due to doctrinal developments unless the Supreme Court has overruled them. *Id.* at 484, 109 S.Ct. 1917. However, the case considered the binding effect of full opinions of the Supreme Court, not a dismissal for want of substantial federal question.

The Supreme Court has stated summary dismissals "do not ... have the same precedential value ... as does an opinion of this Court after briefing and oral argument on the merits." *Confederated Bands & Tribes,* 439 U.S. at 476 n. 20, 99 S.Ct. 740. In contrast to full opinions of the Supreme Court, the Court also has stated doctrinal developments may show a summary dismissal is no longer binding. *Hicks,* 422 U.S. at 344, 95 S.Ct. 2281. *Rodriguez de Quijas* is not analogous to this case. *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), is not applicable here for the same reason.

at 273, 99 S.Ct. 2282 (finding "any state law overtly or covertly designed to prefer males over females" triggers equal protection analysis based on sex).

The U.S. Supreme Court and the Ninth Circuit recognize homosexuals as a constitutionally protected class—although not a suspect or quasi-suspect class—for equal protection purposes. *Romer*, 517 U.S. at 631–32, 116 S.Ct. 1620; *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 573–74 (9th Cir.1990). The Supreme Court has found a burden or hardship imposed on the class of homosexual individuals is an adverse impact on the class. *See, e.g., Romer*, 517 U.S. at 631, 116 S.Ct. 1620 (stating Colorado's Amendment 2 "imposes a special disability upon [homosexual] persons alone"). "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." *Id.* at 633, 116 S.Ct. 1620.

DOMA has a disproportionate effect on homosexual individuals. . DOMA excludes from receipt of federal marriage benefits a type of relationship—a same-sex union— most likely to be entered into by homosexual individuals. *See Lawrence*, 539 U.S. at 581, 123 S.Ct. 2472 (O'Connor, J., concurring) ("Those harmed by this law are people who have a same-sex sexual orientation and thus are more likely to engage in

behavior prohibited . . . ."). This disparate effect of the law on homosexual individuals creates a classification based on sexual orientation. *See id.* at 583, 123 S.Ct. 2472.[20]

Having found DOMA creates a sexual orientation classification, the Court will consider whether DOMA is rationally related to a legitimate government interest for equal protection purposes. *Romer*, 517 U.S. at 624, 631–32, 116 S.Ct. 1620 (identifying a sexual orientation classification and considering whether "it bears a rational relation to some legitimate end"); *High Tech Gays*, 895 F.2d at 574 ("[H]omosexuals do not constitute a suspect or quasi-suspect class entitled to greater than rational basis scrutiny under the equal protection component of the Due Process Clause of the Fifth Amendment.").

b. *Sex–Based Classification*

Plaintiffs argue DOMA also creates a sex-based classification. Previous courts to consider the question have split on the issue. Several state courts have concluded laws limiting marriages to opposite-sex couples create sex-based classifications. *See, e.g., Brause v. Bureau of Vital Statistics*, No. 3AN–95–6562 CI, 1998 WL 88743, at *6 (Alaska Super.Ct. Feb. 27, 1998), *superseded by constitutional amendment*, Alaska Const. art. I, § 25 (amended 1999); *Marriage Cases*, slip op. at *16–19, 2005 WL 583129, at *8–10; *Baehr v. Lew-*

---

**20.** This finding is apparently consistent with all previous decisions on the constitutionality of DOMA or state laws prohibiting same-sex marriage. At least one other court explicitly found a sexual orientation classification. *Li,* 2004 WL 1258167, at *7 (finding, under Oregon law, there was a classification because of the law's discriminatory effect on homosexuals); *Baker v. State,* 170 Vt. 194, 744 A.2d 864, 890 (1999) (Dooley, J., concurring) ("The marriage statutes do not facially discriminate on the basis of sexual orientation. There is, however, no doubt that the requirement that

civil marriage be a union of one man and one woman has the effect of discriminating against lesbian and gay couples . . . who are unable to marry the life partners of their choice."). Other courts apparently implicitly found such a classification because they proceeded to rational basis review. *See, e.g., Wilson,* 354 F.Supp.2d at 1308; *In re Kandu,* 315 B.R. at 141. No court has declined to conduct rational basis review altogether on the ground that there is no sexual orientation classification.

*in,* 74 Haw. 530, 852 P.2d 44, 64 (Haw. 1993), *superseded by constitutional amendment,* Haw. Const. art. I, § 23 (amended 1998); *Li v. State,* No. 0403–03057, 2004 WL 1258167, at *5–6 (Or.Cir. Apr. 20, 2004), *rev'd on other grounds by* 338 Or. 376, 110 P.3d 91 (2005) (en banc). Other courts found the laws did not create sex-based classifications. *See, e.g., Wilson,* 354 F.Supp.2d at 1307–08; *In re Kandu,* 315 B.R. at 143; *Shields v. Madigan,* 5 Misc.3d 901, 783 N.Y.S.2d 270, 276 (2004); *Baker v. State,* 170 Vt. 194, 744 A.2d 864, 880 n. 13 (1999). Still others did not discuss the issue. *See, e.g., Standhardt,* 77 P.3d at 454–65; *Morrison v. Sadler,* 821 N.E.2d 15, 19–35 (Ind.Ct.App.2005); *Hernandez,* 794 N.Y.S.2d at 591–610.

Plaintiffs assert *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), supports their position. In *Loving,* the Supreme Court found laws prohibiting interracial marriages classified based on race, and the Court applied strict scrutiny in the equal protection analysis. The Court rejected the argument there was no racial classification because the laws applied equally to whites and blacks. "[W]e reject the notion that the mere 'equal application' of a statute containing racial classifications is enough to remove the classifications from the Fourteenth Amendment's proscription of all invidious racial discriminations . . . ." *Id.* at 8, 87 S.Ct. 1817. The Supreme Court has followed this principle on other occasions as well: "Judicial inquiry under the Equal Protection Clause . . . does not end with a showing of equal application among the members of the class defined by the legislation." *McLaughlin v. Florida,* 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (analyzing laws preventing interracial couples from cohabiting). The Court found the equal application argument represented "a limited view of the Equal Protection Clause which has not withstood analysis." *Id.* at 188, 85 S.Ct. 283. Defining the classification as one between interracial couples and intraracial couples, the Court held the laws created a racial classification subject to strict scrutiny. *Id.* at 188–96, 85 S.Ct. 283.

Under this view of *Loving* and *McLaughlin,* the conclusion might be that, although DOMA applies equally to men and women, it creates a sex-based classification. The classification would not be between men and women, but would be between opposite-sex couples and same-sex couples.

Defendants contend *Loving* is not controlling because the *Loving* Court recognized the true discriminatory purpose behind the anti-miscegenation laws was to "maintain White Supremacy." 388 U.S. at 11, 87 S.Ct. 1817. Here, Defendants argue, the purpose of DOMA is not to elevate one sex over the other. This Court cannot accept this "lack of discriminatory intent" argument. First, *Loving* stated the laws' discriminatory intent was not essential to its holding: "[W]e find the racial classifications in these statutes repugnant to the Fourteenth Amendment, even assuming an even-handed state purpose to protect the 'integrity' of all races." *Id.* at 11 n. 11, 87 S.Ct. 1817. Second, *McLaughlin* did not discuss any discriminatory purpose of the cohabitation law, yet still found a racial classification. *See generally* 379 U.S. at 184–96, 85 S.Ct. 283.

The Court does not accept Plaintiffs' *Loving* analogy, but for a different reason. To date, the laws in which the Supreme Court has found sex-based classifications have all treated men and women differently. *See, e.g., United States v. Virginia,* 518 U.S. at 519–20, 116 S.Ct. 2264 (law prevented women from attending military college); *Miss. Univ. for Women v. Hogan,* 458 U.S. 718, 719, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (law excluded men from attending nursing school); *Craig,* 429 U.S. at 191–92, 97 S.Ct. 451 (law allowed

women to buy low-alcohol beer at a younger age than men); *Frontiero v. Richardson,* 411 U.S. 677, 678–79, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (law imposed a higher burden on female servicewomen than on male servicemen to establish dependency of their spouses); *Reed,* 404 U.S. at 73, 92 S.Ct. 251 (law created an automatic preference of men over women to administer estates); *see also Baker,* 744 A.2d at 880 n. 13 (discussing Supreme Court precedent on sex-based classifications). Supreme Court precedent has only found sex-based classifications in laws that have a disparate impact on one sex or the other. This case is not in that category.

This Court applies binding precedent on sex-based classifications as it now exists. That precedent finds sex-based classifications in laws that treat men and women differently. DOMA does not treat men and women differently. The Court concludes there is no sex-based classification.

### 4. *Due Process*

Plaintiffs argue DOMA denies them the fundamental right to marry in violation of the Due Process Clause. If what the law recognizes as a "fundamental" right is implicated, the Court applies a "strict scrutiny" analysis that forbids infringement of the right "unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores,* 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). If, however, the interest infringed is not a fundamental right, the Court uses a more liberal "rational basis" analysis that requires upholding the legislation if it is rationally related to a legitimate government interest. *Washington v. Glucksberg,* 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

It is important to define the due process fundamental right with precision. The Supreme Court has stated, "[W]e have required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Id.* at 721, 117 S.Ct. 2258 (quoting *Flores,* 507 U.S. at 302, 113 S.Ct. 1439). Courts should exercise the utmost care in conferring fundamental right status on a newly asserted interest. *Id.* at 720, 117 S.Ct. 2258.

■ It is undisputed there is a fundamental right to marry. *Planned Parenthood v. Casey,* 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("Our law affords constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education.... These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment.") (citations omitted); *Turner v. Safley,* 482 U.S. 78, 95, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ("[T]he decision to marry is a fundamental right ...."); *Zablocki v. Redhail,* 434 U.S. 374, 383–86, 384, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) ("[T]he right to marry is of fundamental importance for all individuals."); *Loving,* 388 U.S. at 12, 87 S.Ct. 1817 ("The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men."); *Griswold v. Connecticut,* 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) ("We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions.").

No Supreme Court case addressing the fundamental right to marry apparently defines the fundamental right in narrower terms. In *Loving*, the Court defined the fundamental right as the right to marry, not the right to interracial marriage. 388 U.S. at 12, 87 S.Ct. 1817. In *Turner*, the fundamental right was the right to marry, not the right to inmate marriage. 482 U.S. at 94–96, 107 S.Ct. 2254. In *Zablocki*, the fundamental right was the right to marry, not the right of people owing child support to marry. 434 U.S. at 383–86, 98 S.Ct. 673.

Plaintiffs assert they are not asking the Court to find a new fundamental right, but only to find the existing fundamental right to marry includes their right to marry each other. In effect, Plaintiffs contend the fundamental right to marry includes the right to same-sex marriage.[21]

■ The Due Process Clause "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Glucksberg*, 521 U.S. at 720–71, 117 S.Ct. 2258 (internal quotations and citations omitted). Reliance on history is not absolute: " '[H]isto-

ry and tradition are the starting point but not in all cases the ending point of the substantive due process inquiry.' " *Lawrence*, 539 U.S. at 572, 123 S.Ct. 2472 (alteration in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 857, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (Kennedy, J., concurring)).[22] With respect to homosexual conduct, the Supreme Court has stated "our laws and traditions in the past half century are of most relevance here," *id.* at 571–72, 123 S.Ct. 2472, because "there is no longstanding history in this country of laws directed at homosexual conduct as a distinct matter," *id.* at 568, 123 S.Ct. 2472.

The history and tradition of the last fifty years have not shown the definition of marriage to include a union of two people regardless of their sex. Until 2003, when Massachusetts became the first state to recognize a right to same-sex marriages, marriage in the United States uniformly had been a union of two people of the opposite sex. A definition of marriage only recognized in Massachusetts and for less than two years cannot be said to be " 'deeply rooted in this Nation's history and tradition' " of the last half century. *Glucksberg*, 521 U.S. at 721, 117 S.Ct. 2258 (quoting *Moore v. City of East Cleveland*,

---

**21.** Some state courts have defined the right protected by their state constitutions as the fundamental right to marry the person of one's choice. *See, e.g., Brause*, 1998 WL 88743, at *1 ("The court finds that marriage, i.e., the recognition of one's choice of a life partner, is a fundamental right."); *Perez v. Sharp*, 32 Cal.2d 711, 198 P.2d 17, 19 (1948) ("[T]he right to marry is the right to join in marriage with the person of one's choice ...."); *Marriage Cases*, slip op. at *21, 2005 WL 583129, at *11 ("Family Code sections 300 and 308.5 implicate the basic human right to marry a person of one's choice."); *Goodridge v. Dep't of Pub. Health*, 440 Mass. 309, 798 N.E.2d 941, 958 (2003) ("[T]he right to marry means little if it does not include the right to marry the person of one's choice,

subject to appropriate government restrictions in the interests of public health, safety, and welfare."); *Hernandez*, 794 N.Y.S.2d at 596 ("[T]he right to choose one's life partner is fundamental to the right of privacy ....").

**22.** The Court does not engage in the "circular reasoning" feared by some courts. *See, e.g., Goodridge*, 798 N.E.2d at 961 n. 23 ("[I]t is circular reasoning, not analysis, to maintain that marriage must remain a heterosexual institution because that is what it historically has been."). The Court does not here hold marriage must remain a heterosexual institution. The Court holds that, for defining the fundamental right, marriage historically has been a heterosexual institution.

431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion)).

■ At the time of *Loving* in 1967, it is argued, the definition of marriage was a union of an intraracial couple, but, despite history and tradition, the Court found the fundamental right to marry extended to the interracial plaintiffs in the case. *Loving*, 388 U.S. at 12, 87 S.Ct. 1817. It is argued this supports the conclusion Plaintiffs here have a fundamental right to marry a person of their choice.

However, there is nothing in *Loving* that suggests an extension of the definition of the fundamental right. In its short reference to due process, the Supreme Court held the fundamental right to marry is long-recognized as "fundamental to our very existence and survival," and to deny this fundamental freedom on so unsupportable a basis as the racial classification in the subject statutes is subversive of the principle of equality. *Id.* Limiting its application to racial discrimination, the Supreme Court held due process "requires that the freedom of choice to marry not be restricted by invidious racial discriminations. Under our Constitution, the freedom to marry or not marry, a person of another race resides with the individual and cannot be infringed by the State." *Id.* *Loving* held, in effect, the race restriction on the fundamental right to marry was invidious discrimination, unsupportable under any standard. *Loving* did not confer a new fundamental right or hold the fundamental right to marry included the unrestricted right to marry whomever one chooses.

The Court concludes the fundamental due process right to marry does not include a fundamental right to same-sex marriage or Plaintiffs' right to marry each other. Plaintiffs' claimed interest is not part of a fundamental right. For due process purposes, the Court reviews DOMA's "one man, one woman" restriction for rational basis.[23]

### 5. Rational Basis Review

When, as here, a law does not make a suspect or quasi-suspect classification (the equal protection issue) and does not burden a fundamental right (the due process issue), it will be upheld if it is rationally related to a legitimate government interest. *Romer*, 517 U.S. at 631, 116 S.Ct. 1620. This rational basis scrutiny " 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' " *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). The Court must accept Congress's generalizations "even when there is an imperfect fit between means and ends," *id.* at 321, 113 S.Ct. 2637, as long as the generalization is "at least debatable," *id.* at 326, 113 S.Ct. 2637 (internal quotations omitted). Government interests for the law do not have to be the actual interests of Congress, and they do not have to be supported with evidence. *Id.* at 320–21, 113 S.Ct. 2637. Even if the rationale for the law seems tenuous, it is rationally related to the government interest if it bears some relation to that interest. *Romer*, 517 U.S. at 632–33, 116 S.Ct. 1620. DOMA is afforded a "strong presumption of validity." *Heller*, 509 U.S. at 319, 113 S.Ct. 2637. To overcome the presumption here, Plaintiffs have the burden of negating " 'every conceivable basis' " that may sup-

---

**23.** Plaintiffs also separately challenge DOMA under the "right to privacy" recognized in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The "right to privacy" is not an independent right. It is "implicit in the ... Due Process Clause." *Zablocki*, 434 U.S. at 384, 98 S.Ct. 673. Having decided to review Plaintiffs' due process claim, there is no separate claim to be decided.

port section 3 of DOMA. *Id.* at 320, 113 S.Ct. 2637 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)).

■ The parties in this case have variously suggested DOMA is rationally related to the legitimate government interest of encouraging procreation, or of encouraging the creation of stable relationships that facilitate rearing children by both biological parents. Similar statements of a legitimate interest have been made by various courts. *See Wilson,* 354 F.Supp.2d at 1308 (collecting court-recognized legitimate interest descriptions); *In re Kandu,* 315 B.R. at 145–46 (same). The Court finds it is a legitimate interest to encourage the stability and legitimacy of what may reasonably be viewed as the optimal union for procreating and rearing children by both biological parents.

Because procreation is necessary to perpetuate humankind, encouraging the optimal union for procreation is a legitimate government interest. Encouraging the optimal union for rearing children by both biological parents is also a legitimate purpose of government. The argument is not legally helpful that children raised by same-sex couples may also enjoy benefits, possibly different, but equal to those experienced by children raised by opposite-sex couples. It is for Congress, not the Court, to weigh the evidence.

By excluding same-sex couples from the federal rights and responsibilities of marriage, and by providing those rights and responsibilities only to people in opposite-sex marriages,[24] the government is com-

municating to citizens that opposite-sex relationships have special significance. Congress could plausibly have believed sending this message makes it more likely people will enter into opposite-sex unions, and encourages those relationships. This question is at least debatable. *See Heller,* 509 U.S. at 326, 113 S.Ct. 2637 ("[S]ince the question is at least debatable, rational-basis review permits a legislature to use just this sort of generalization.") (internal quotation and citations omitted).

Plaintiffs have not met their burden of showing DOMA is not rationally related to any legitimate government interest. Section 3 of DOMA passes rational basis scrutiny. It does not violate the due process or equal protection guarantees of the Fifth Amendment.

## III. *DISPOSITION*

The Court ABSTAINS for now on the question of the constitutionality of the California statutes. Plaintiffs lack standing to challenge the constitutionality of section 2 of DOMA. Section 3 of DOMA does not violate the equal protection or due process guarantees of the Fifth Amendment.

JUDGMENT is entered in favor of Defendants and against Plaintiffs on the constitutionality of the federal Defense of Marriage Act.[25] The matter of the constitutionality of the California state statutes is STAYED.[26] This stay is immediately appealable.[27]

24. Plaintiffs assert, and Defendants do not contest, federal law bestows over 1,000 rights and responsibilities on opposite-sex married couples.

25. Pursuant to Federal Rule of Civil Procedure 54(b), the Court directs the entry of final

judgment as to this claim and finds there is no just reason for delay.

26. A stay, rather than dismissal, is appropriate. *Almodovar,* 832 F.2d at 1141.

27. 28 U.S.C. § 1292(a)(1) (1993); *Porter,* 319 F.3d at 489.