**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARTHUR BRUNO SMELT;
CHRISTOPHER DAVID HAMMER,
    *Plaintiffs-Appellants,*

v.

COUNTY OF ORANGE, California;
COUNTY CLERK, for the County of
Orange; MICHAEL RODRIAN, in his
official capacity as State Registrar
of Vital Statistics, California
Department of Health Services;
UNITED STATES OF AMERICA;
    *Defendants-Appellees,*

PROPOSITION 22 LEGAL
DEFENSE AND EDUCATION FUND;
CAMPAIGN FOR CALIFORNIA
FAMILIES,
    *Defendant-Intervenors-*
       *Appellees.*

No. 05-56040

D.C. No.
CV-04-01042-GLT

OPINION

Appeal from the United States District Court
for the Central District of California
Gary L. Taylor, District Judge, Presiding

Argued and Submitted
April 4, 2006—Pasadena, California

Filed May 5, 2006

Before: Jerome Farris, Ferdinand F. Fernandez, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Fernandez;
Concurrence by Judge Farris

5043

## COUNSEL

Richard C. Gilbert, Diane J. Marlowe, Law Offices of Gilbert & Marlowe, Santa Ana, California, for the plaintiffs-appellants.

Teri L. Maksoudian, Santa Ana, California, for County of Orange and County Clerk of Orange County; Christopher E. Krueger, Office of the Attorney General, Sacramento, California, for the State Registrar of Vital Statistics and the California Department of Health Services; August E. Flentje and Gregory G. Katsas (argued), U.S. Department of Justice, Civil Division, Washington, D.C., for the United States of America, defendants-appellees.

Dale Schowengerdt, Scottsdale, Arizona, for Proposition 22 Legal Defense and Education Fund; Rena M. Lindevaldsen, Liberty Counsel, Longwood, Florida, for Campaign for California Familes, defendant-intervenors-appellees.

Christopher F. Stoll, Heller Ehrman LLP, San Francisco, California, for amicus curiae Equality California.

Steven W. Fitschen, Virginia Beach, Virginia, for amicus curiae National Legal Foundation.

## OPINION

FERNANDEZ, Circuit Judge:

Arthur Bruno Smelt and Christopher David Hammer, two men who wish to marry each other, appeal the district court's orders[1] which (a) abstained as to their claim that three sections of the California law relating to marriage are unconstitutional,[2] and (b) ruled adversely to them on their claims that two sections of the Federal Defense of Marriage Act (DOMA)[3] are likewise unconstitutional. We affirm in part, reverse in part, and remand for dismissal of both DOMA claims.

## BACKGROUND

It is agreed: Smelt and Hammer are both males who wish to obtain a California marriage license and to marry each other in that state. They applied to the County Clerk of Orange County, California, for issuance of a marriage license on two occasions. They were denied a license both times "be-

---

[1]*See Smelt v. County of Orange*, 374 F. Supp. 2d 861 (C.D. Cal. 2005) (*Smelt I*).

[2]*See* Cal. Fam. Code §§ 300, 301, 308.5.

[3]*See* Defense of Marriage Act, Pub. L. No. 104-199, §§ 2, 3, 110 Stat. 2419 (1996) (codified at 28 U.S.C. § 1738C, 1 U.S.C. § 7).

cause [they] are of the same gender." Were it not for that, "[they] meet the qualifications for issuance of a marriage license. [They] applied for and received a Declaration of Domestic Partnership from the State of California dated January 10, 2000."[4]

Smelt and Hammer then brought this action against the County of Orange and the Orange County Clerk (collectively the County); and the State Registrar of Vital Statistics, California Department of Health Services (the State).[5] The amended complaint alleged that to the extent that California Family Code sections 300,[6] 301,[7] and 308.5[8] preclude them

[4]We note that documents over which we have taken judicial notice show that Smelt and Hammer filed forms with the California Secretary of State on December 16, 2004, in which they terminated their domestic partnership. *See* Cal. Fam. Code § 299 (2004).

[5]Several other parties and amici have since become involved. The United States intervened pursuant to 28 U.S.C. § 2403 to defend the constitutionality of DOMA. The district court permitted Campaign for California Families (CCF) and Proposition 22 Legal Defense and Education Fund (Prop 22 Fund) to intervene. CCF argues that DOMA and the state statutes limiting marriage to opposite-sex couples are constitutional. Prop 22 Fund argues to this court that DOMA is constitutional. Equality California (an organization that represents lesbian, gay, bisexual, and transgendered Californians) moved to intervene in this appeal. Equality California's request was denied by a motions panel, and its opening brief was filed as an amicus brief. It argues that we should not reach the merits of the claims. Finally, the National Legal Foundation filed an amicus brief in this court, urging affirmance on the merits of the DOMA challenges.

[6]Cal. Fam. Code § 300 reads as follows, in pertinent part: "Marriage is a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary. Consent alone does not constitute marriage. Consent must be followed by the issuance of a license and solemnization . . . ."

[7]Cal. Fam. Code § 301 reads as follows: "An unmarried male of the age of 18 years or older, and an unmarried female of the age of 18 years or older, and not otherwise disqualified, are capable of consenting to and consummating marriage."

[8]Cal. Fam. Code § 308.5 reads as follows: "Only marriage between a man and a woman is valid or recognized in California."

from obtaining a marriage license, those sections violate: equal protection; due process; "the Right to Life, Liberty and the Pursuit of Happiness"; "the right to be free from an undue invasion of the Right to Privacy; . . . the Ninth Amendment Right of Reservation of all Rights not Enumerated to the People, and the Right to Travel, and The Right of Free Speech." The complaint also asserted that section 308.5 violates the Full Faith and Credit Clause of the United States Constitution.[9]

Additionally, the complaint raised federal constitutional challenges to DOMA. Specifically, it alleged that Section 2 of DOMA (28 U.S.C. § 1738C)[10] violates the United States Constitution's Due Process Cause (Fifth Amendment), equal protection rights (Fifth Amendment), the Right to Privacy, and the Full Faith and Credit Clause. Finally, it alleged that Section 3 of DOMA (1 U.S.C. § 7)[11] violates the "liberty interests protected by the Due Process Clause"; discriminates "on the basis of gender" and "sexual orientation" in violation of equal protection; and violates "the privacy interests protected by the Right to Privacy."

---

[9]"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1.

[10]"No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship." 28 U.S.C. § 1738C.

[11]"In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." 1 U.S.C. § 7.

To rectify this myriad of alleged constitutional violations, Smelt and Hammer sought a declaratory judgment that the relevant sections of the California Family Code and DOMA are unconstitutional. They also sought injunctive relief "[m]andating the use of gender-neutral terms and issuing a marriage license to [them]."

The State Defendants then filed an abstention motion based on pending litigation in the California state courts on the issue of whether the California Family Code sections that limit marriage to couples consisting of an unmarried man and an unmarried woman comply with the provisions of the California constitution (the Marriage Cases).[12] Equality California, which is involved in the Marriage Cases, filed an amicus brief in support of abstention. The district court took the motion to abstain under submission. In addition, cross motions for summary judgment were filed by Smelt and Hammer, the County, the United States, Prop 22 Fund, and CCF.

The district court ultimately issued a published order: (1) abstaining pursuant to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941), from deciding the constitutionality of the challenged sections of the California Family Code until the Marriage Cases had been concluded;[13] (2) deciding that Smelt and Hammer have no standing to challenge Section 2 of DOMA (28 U.S.C. § 1738C); and (3) finding that Smelt and Hammer have standing to challenge Section 3 of DOMA (1 U.S.C. § 7), but that

---

[12]*In re Coordinated Proceeding, Special Title [Rule 1550(c)], Marriage Cases*, No. 4365, 2005 WL 583129 (Cal. Super. Ct. Mar. 14, 2005). The Superior Court struck down the sections. The six consolidated cases are now pending before the California Court of Appeal, First Appellate District, Division 3 (Case Nos. A110449, A110450, A110451, A110463, A110651, A110652). The cases were fully briefed as of January 25, 2006, and no date for argument has been set.

[13]The district court anticipated that the Marriage Cases would ultimately reach and be decided by the California Supreme Court. So do we.

the section does not violate the United States Constitution. *See Smelt I*, 374 F. Supp. 2d at 864-80.

Needless to say, Smelt and Hammer disagreed; this appeal followed.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over the abstention order and stay. *See* 28 U.S.C. §§ 1291, 1292(a)(1); *Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003). We also have jurisdiction over the district court's DOMA determinations. *See* Fed. R. Civ. P. 54(b); *see also Smelt I*, 374 F. Supp. 2d at 880 n.25.

We review *Pullman* abstention decisions under a "modified abuse of discretion standard." *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987). That is, we review de novo whether the requirements for *Pullman* abstention have been met. *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 939 (9th Cir. 2002). Then, we review the district court's ultimate decision to abstain under *Pullman* for abuse of discretion. *Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir. 1989). "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993) (internal quotation marks omitted).

We review de novo the district court's determinations regarding standing. *Pony v. County of L.A.*, 433 F.3d 1138, 1142 n.2 (9th Cir. 2006). "In order to have standing at the summary judgment stage, plaintiffs must set forth by affidavit or other evidence specific facts, showing that they have suffered an injury in fact that is fairly traceable to the action they seek to challenge." *Arakaki v. Haw.*, 314 F.3d 1091, 1098 (9th Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

### I. *The California Family Code Sections; Abstention*

**[1]** As already noted, the district court abstained on Smelt and Hammer's attacks on the California Family Code Sections. *See Smelt I*, 374 F. Supp. 2d at 865-70. It did so pursuant to the *Pullman* abstention doctrine. The source of the doctrine is found, not surprisingly, in a case involving Pullman sleeping cars, where the federal courts were asked to restrain an order of the Texas Railroad Commission regarding the use of attendants in railroad sleeping cars. *Pullman*, 312 U.S. at 497-98, 61 S. Ct. at 644. A three-judge court (one circuit judge and two district judges) issued an injunction, and an appeal to the Supreme Court followed. *Id.* at 498, 61 S. Ct. at 644. The Court noted that the Supreme Court of Texas would have the last word on whether the Commission had even acted within the scope of authority given to it by the laws of Texas. *Id.* at 499-500, 61 S. Ct. at 645. It saw nothing to preclude an action which could be "brought with reasonable promptness, in the state court." *Id.* at 502, 61 S. Ct. at 646. Thus, the Supreme Court determined that the federal courts should retain the action, but abstain while that state court process went forward,[14] because the case touched a sensitive area of social policy,[15] the state decision could obviate the need for federal constitutional adjudication,[16] and any federal construction of the state law might, at any time, be upended by a decision of the state courts.[17] That, over time, has been distilled into the factors that go into a determination of whether the *Pullman* abstention doctrine can be utilized. Those factors are usually rendered as follows:

---

[14]*Id.* at 501-02, 61 S. Ct. at 646.

[15]*Id.* at 498, 61 S. Ct. at 644.

[16]*Id.*

[17]*Id.* at 499-500, 61 S. Ct. at 645.

(1)   The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.

(2)   Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.

(3)   The possibly determinative issue of state law is doubtful.

*C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (internal quotation marks omitted); *see also Porter*, 319 F.3d at 492. And it is not even necessary that the state adjudication "obviate the need to decide all the federal constitutional questions" as long as it will "reduce the contours" of the litigation. *C-Y Dev.*, 703 F.2d at 380. Finally, the issue here is not one of jurisdiction; it is ultimately a question of the exercise of discretion. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001); *Ripplinger*, 868 F.2d at 1048. We turn, then, to the situation presented by Smelt and Hammer's claims in this case.

**[2]** We must first consider whether the complaint touches a sensitive area of social policy upon which we should not enter unless we have no real alternative. It does, for it cannot be gainsaid that in our social and legal traditions the institution of marriage has been considered to be an integral part of the foundation of a well-ordered and viable society, the sinew that strengthens society, the glue that holds society together. In an unbroken line of cases, the Supreme Court has recognized that.

For example, in *Reynolds v. United States*, 98 U.S. 145, 25 L. Ed. 244 (1878), the Supreme Court noted that:

Marriage, while from its very nature a sacred obligation, is nevertheless, in most civilized nations, a civil

contract, and usually regulated by law. Upon it society may be said to be built, and out of its fruits spring social relations and social obligations and duties, with which government is necessarily required to deal.

*Id.* at 165. Ten years later, the Court further explicated that view when it said:

[Marriage] is something more than a mere contract. The consent of the parties is of course essential to its existence, but when the contract to marry is executed by the marriage, a relation between the parties is created which they cannot change. Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress.

*Maynard v. Hill*, 125 U.S. 190, 210-11, 8 S. Ct. 723, 729, 31 L. Ed. 654 (1888). More recently, the Court has noted that: "Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival." *Loving v. Virginia*, 388 U.S. 1, 12, 87 S. Ct. 1817, 1824, 18 L. Ed. 2d 1010 (1967). And still more recently, the Court reiterated that marriage is " 'fundamental to the very existence and survival of the race.' " *Zablocki v. Redhail*, 434 U.S. 374, 384, 98 S. Ct. 673, 680, 54 L. Ed. 2d 618 (1978).

**[3]** Because of its vital importance to society, while the people through their governments have always encouraged marriage, they have always regulated it. Generally that has been at the state level. As the Court noted as long ago as

1877, "[t]he State . . . has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved." *Pennoyer v. Neff*, 95 U.S. 714, 734-35, 24 L. Ed. 565 (1877), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977). Then, in 1888, the Court had this to say:

> Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution.

*Maynard*, 125 U.S. at 205, 8 S. Ct. at 726. Again, "the state court is no doubt correct in asserting that marriage is a social relation subject to the State's police power." *Loving*, 388 U.S. at 7, 87 S. Ct. at 1821. Similarly, where the territories were concerned, the Court held that Congress may impose limitations on marriage. *See Reynolds*, 98 U.S. at 166.

[4] California has exercised that undoubted police power, and in so doing has expressed its concerns and beliefs about this sensitive area. Thus, as this case shows us, the people of the State of California have defined what marriage is, *viz.* a consensual, contractual personal relationship between "a man and a woman," which is solemnized. Cal. Fam. Code § 300; *see also* Cal. Fam. Code §§ 301, 308.5.[18] By the same token,

---

[18]The definition is not peculiar; indeed it is traditional. *See, e.g.*, 2 Samuel Johnson, *A Dictionary of the English Lanuage* (London, W. Strahan et. al. 1755) (Marriage is: "The act of uniting a man and woman for life." To marry is: "To join a man and woman."); Noah Webster, *A Compendi-*

California has regulated and limited the institution in a number of ways. For example: those under 18 cannot marry without somebody else's consent;[19] to marry, you must be unmarried (in other words, no polygamy or polyandry);[20] marriages within certain degrees of consanguinity are forbidden.[21]

[5] But as important as the institution of marriage is, our purpose here is not to write a paean to its past and contemporary glories; it is the more mundane purpose of pointing to the fact that it is difficult to imagine an area more fraught with sensitive social policy considerations in which federal courts should not involve themselves if there is an alternative.[22] In short, the first *Pullman* factor is easily met, and we now turn to the second one.

[6] When we do so, we think it is equally apparent that the resolution of the Marriage Cases in the California courts may not only narrow, but even eliminate, any need for federal constitutional adjudication regarding Smelt and Hammer's attacks on the California statutory provisions in this case. If

---

*ous Dictionary of the English Language* 185 (1806) (Marriage is: "the act of joining man and woman."); *Webster's Third New International Dictionary* 1384 (3d ed. 1986) (Marriage is: "the state of being united to a person of the opposite sex as husband or wife."); *Black's Law Dictionary* 972 (6th ed. 1990) (Marriage is: "Legal union of one man and one woman as husband and wife."); *The Compact Oxford English Dictionary* 1039 (2d ed. 1994) (Marriage is: "The condition of being a husband or wife . . . .").

[19]Cal. Fam. Code §§ 301, 302.

[20]Cal. Fam. Code §§ 301, 2201.

[21]Cal. Fam. Code § 2200.

[22]We do not overlook Smelt and Hammer's claim that this case touches on First Amendment issues, which should dissuade us from abstention. *See Ripplinger*, 868 F.2d at 1048. But it is difficult, or impossible, to see a true speech problem here, which is what *Ripplinger* was concerned with. All that is involved here is the failure to issue a marriage license. In all events, state litigation on the issues is already well underway. *See Almodovar*, 832 F.2d at 1141; *see also Askew v. Hargrave*, 401 U.S. 476, 477-78, 91 S. Ct. 856, 857-58, 28 L. Ed. 2d 196 (1971) (per curiam).

the California courts ultimately determine that the sections in question violate the California constitution, we will have no need to consider the federal constitutional claims regarding those sections. That brings us to the third *Pullman* factor.

**[7]** Again, the third factor is easily satisfied in the context of this case. We simply "cannot predict with any confidence how [the California Supreme Court] would decide" the state constitutional questions. *Pearl Inv. Co. v. City & County of S.F.*, 774 F.2d 1460, 1465 (9th Cir. 1985); *see also Fireman's Fund*, 302 F.3d at 930-40. Especially is that true where, as here, the California Supreme Court will be faced with a constitutional issue that presents difficult questions of state constitutional law, which it has not yet passed upon.[23] Added to that is the fact that a California Superior Court has found the state statutes to be unconstitutional, and review of that decision is now pending in a California Court of Appeal in the Marriage Cases.

**[8]** Therefore, all factors in the *Pullman* analysis point toward abstention. Nor have we any reason to assume that the California Supreme Court will construe the California Constitution in the same way as the federal courts construe the United States Constitution.[24] That makes this a particularly good case for *Pullman* abstention. *See Columbia Basin*, 268 F.3d at 806. The district court did not abuse its discretion when it abstained.

---

[23]The Court *has* decided that a county clerk and county recorder could not disobey state statutes about marriage based on their personal opinions about the constitutionality of those statutes. *See Lockyer v. City & County of S.F.*, 33 Cal. 4th 1055, 1119-20, 95 P.3d 459, 498-99, 17 Cal. Rptr. 3d 255, 272-74 (2004). However, the Court did not decide the question of whether the state laws on marriage were constitutional. *Id.* at 1125, 95 P.3d at 502, 17 Cal. Rptr. 3d at 277 (Moreno, J., concurring).

[24]For example, California's constitutional law on privacy is different from federal law on that subject. *See Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 326, 940 P.2d 797, 808, 66 Cal. Rptr. 2d 210, 221 (1997).

II.   *DOMA; Standing*

As we earlier noted, Smelt and Hammer have attacked both of the operative sections of DOMA.[25] However, no state has determined that they are married for state purposes, and they do not suggest that they have applied for and been denied some federal benefit. Thus, we are necessarily faced with the issue of standing. We would be, even if neither the district court nor the parties had addressed that issue. *See Arakaki*, 314 F.3d at 1097; *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997) (en banc). That, of course, is because our jurisdiction is limited to cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1.

As the Supreme Court has pointed out: "The standing requirement is born partly of an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S. Ct. 2301, 2308, 159 L. Ed. 2d 98 (2004) (internal quotation marks omitted).

[9] "Over the years," the Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). Those are:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of—

---

[25]*See* DOMA Section 2 (28 U.S.C. § 1738C) and DOMA Section 3 (1 U.S.C. § 7).

the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560-61, 112 S. Ct. at 2136 (citations omitted); *see also Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). The burden of showing that there is standing rests on the shoulders of the party asserting it. *Defenders of Wildlife*, 504 U.S. at 561, 112 S. Ct. at 2136.

**[10]** But there is still more to standing requirements because, beyond constitutional standing, there are prudential standing principles to which "the federal judiciary has also adhered." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474, 102 S. Ct. 752, 760, 70 L. Ed. 2d 700 (1982). As the Supreme Court has put it:

> [T]his Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." In addition, even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating "abstract questions of wide public significance" which amount to "generalized grievances," pervasively shared and most appropriately addressed in the representative branches. Finally, the Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."

*Id.* at 474-75, 102 S. Ct. at 760 (citations omitted); *see also Elk Grove*, 542 U.S. at 12, 124 S. Ct. at 2309.

With those principles in hand, we can approach Smelt and Hammer's attacks on DOMA. We must decide whether Smelt and Hammer have established constitutional and prudential standing as to either of the two relevant DOMA sections. They have not.

[11] We first consider Section 2 of DOMA (28 U.S.C. § 1738C), which, in effect, indicates that no state is *required* to give full faith and credit to another state's determination that "a relationship between persons of the same sex . . . is treated as marriage." The insurmountable hurdle that Smelt and Hammer face here is the requirement that they show some actual or imminent injury as opposed to a mere conjectural or hypothetical one.

[12] No state has determined that Smelt and Hammer are married. In fact, as matters now stand California will not do so.[26] Were they to change their residence to Massachusetts, their situation might change,[27] but they have placed nothing before us to suggest that they have gone, or intend to go, to that state. In sum, while Section 2 may affect someone who has been declared married in some state, Smelt and Hammer do not come within that category of people. That being so, we agree with the district court[28] that Smelt and Hammer lacked standing to attack Section 2 of DOMA. But, when it comes to Section 3 of DOMA, we depart from the district court's opposite conclusion.[29]

---

[26]Even if Smelt and Hammer were now in a California registered domestic partnership, that is not by any means a marriage. *See Knight v. Superior Court*, 128 Cal. App. 4th 14, 30, 26 Cal. Rptr. 3d 687, 699 (2005); *cf.* Cal. Fam. Code § 297.5(k) (stating that the section does not modify any federal benefits or protections).

[27]*See Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941, 968 (Mass. 2003); *see also Cote-Whitacre v. Dep't of Pub. Health*, 844 N.E.2d 623, 635 (Mass. 2006) (Spina, J., concurring).

[28]*See Smelt I*, 374 F. Supp. 2d at 870-71.

[29]*See id.* at 871.

**[13]** Section 3 of DOMA (1 U.S.C. § 7) is definitional. The word "marriage" and the word "spouse" are defined for the purposes of federal statutes, rules and regulations. Marriage, it declares, "means only a legal union between one man and one woman as husband and wife." *Id.*[30] It does not purport to preclude Congress or anyone else in the federal system from extending benefits to those who are not included within that definition.

**[14]** Here, as with Section 2 of DOMA, Smelt and Hammer are not even married under any state law, or, for that matter, under the law of any foreign country. No doubt they wish they could be, but, again, they are not. We, therefore, do not see how they can claim standing to object to Congress's definition of marriage for federal statutory and regulatory purposes. It certainly is not a question of Congress's refusal to recognize *their* status. DOMA itself simply does not injure them or exclude them from some undefined benefit to which they might have been or might someday be entitled. In fact, they do not suggest that they have applied for any federal benefits, much less been denied any at this point. *See Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220-21 (9th Cir. 1992) (per curiam). That they might someday be married under the law of some state or ask for some federal benefit which they are denied is not enough. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 655 (9th Cir. 2002); *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996). In short, they have not spelled out a legally protected interest, much less one that was injured in a concrete and particularized way.

**[15]** We, of course, recognize that the district court relied on the fact that Smelt and Hammer had a kind of "legal union" under California law because they were registered

---

[30]As we noted in footnote 18 with respect to the similar California statutes, that definition is not extraordinary; it is traditional.

domestic partners.[31] However, that does not affect the alchemy at all. California does not use the phrase "legal union"; it merely gives registered domestic partners certain legal rights and obligations.[32] And, those are certainly not the only legal relationships or unions possible if, indeed, we are going to move beyond the kinds that have historically defined a marriage. An ordinary partnership is a kind of legal union; so, too, in a way, is that special type of contract (or partnership) that can be formed when a man and a woman agree to live together outside of marriage. *See, e.g.*, *Marvin v. Marvin*, 18 Cal. 3d 660, 683-84, 557 P.2d 106, 122-23, 134 Cal. Rptr. 815, 831-32 (1976). And when a group forms a corporation, there is a kind of legal union also. None of those possible relationships or unions can logically be said to confer standing to attack DOMA's definition on its face simply because it refers to legal unions. There is no good reason to treat Smelt and Hammer's relationship any differently. Thus, the mere fact that Smelt and Hammer were in a kind of recognized legal relationship in California is not sufficient to confer standing upon them to attack Section 3 of DOMA on its face.[33]

[16] But even if Smelt and Hammer were able to establish constitutional standing, their case stumbles on at least one of the prudential standing hurdles. It is easy to discern that Smelt and Hammer are asking the court to decide " 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 474-75, 102 S. Ct. at 760.[34]

---

[31]*See* Cal. Fam. Code § 297.5.

[32]*Id.*

[33]If it were, as we pointed out in footnote 4, that legal relationship has been dissolved under California law. If it conferred standing at first, it no longer can. *See Elk Grove*, 542 U.S. at 11-13, 124 S. Ct. at 2308-09.

[34]We recognize that Congress did already address the definition of marriage in DOMA, but Smelt and Hammer's generalized attack remains a fit topic for that body rather than the courts. For example, legislation about

**[17]** While a scry of the complaint might lead one to think that the issue here is not general, a true perscrutation leads to the opposite conclusion. Section 3 of DOMA is merely definitional, and we are told that the words it defines are found in well over one thousand federal statutory enactments.[35] Again, Smelt and Hammer are not in a relationship that has been dubbed marriage by any state, much less by the State of California. True, they are in a relationship, but their attack on DOMA in its multitude of applications is one that every taxpayer and citizen in the country could theoretically bring on the basis that the definition does not include some favorite grouping within its definition of marriage. Thus, anyone could argue that some federal statute might deprive some person in some group of some benefit. Any citizen[36] or taxpayer[37] could as easily claim that some application or other of the DOMA definition to some as yet undesignated statute, which confers some public benefit or right, might exclude that person because DOMA requires a legal union, a man, and a woman.

**[18]** Because of the generality of the abstract facial attack made here, neither we, nor anyone else, can know whether in the context of some particular statute as applied to some particular person in some particular situation Congress's use of the word "marriage" will amount to an unconstitutional classification. Thus, Smelt and Hammer's facial attack on Section

---

same-sex couples is currently pending in Congress. *See* Domestic Partnership Benefits and Obligations Act, H.R. 3267, 109th Cong. (2005); Family and Medical Leave Inclusion Act, H.R. 475, 109th Cong. (2005); Marriage Protection Amendment, S.J. Res. 1, 109th Cong. (2005).

[35]It seems that Smelt and Hammer would leave us to fossick in over a thousand statutory provisions to find those that may apply to them at this time should they seek benefits.

[36]That could be a polygamist, a polyandrist, one or both of two roommates or friends (perhaps loving friends), any member of a group of two or more people, a member of a partnership, a corporation, and—as the latter suggests—even a single person.

[37]*Supra* note 36.

3 of DOMA is foreclosed because countenancing it would ignore "unambiguous limitations on taxpayer and citizen standing." *Valley Forge*, 454 U.S. at 488, 102 S. Ct. at 767. They cannot establish prudential standing at this juncture. In so stating, we do not question the " 'sincerity of [their] stated objectives and the depth of their commitment to them.' " *Id.* at 486 n.21, 102 S. Ct. at 766 n.21. "[B]ut standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Id.* at 486, 102 S. Ct. at 766. Motivation alone is not enough. *Id.* at 486 n.21, 102 S. Ct. at 766 n.21. No doubt Smelt and Hammer find DOMA "personally offensive," but that does not suffice to give them standing. *Schaffer v. Clinton*, 240 F.3d 878, 884 (10th Cir. 2001) (A party's "moral outrage, however profoundly and personally felt, does not endow him with standing to sue."); *see also Elk Grove*, 542 U.S. at 11-18, 124 S. Ct. at 2308-12 (deciding that despite his strongly held atheistic beliefs, father lacked standing to challenge Pledge of Allegiance use at daughter's public school); *Flora v. White*, 692 F.2d 53, 54 (8th Cir. 1982) (per curiam) (holding that adverse psychological impact due to a religious test in state constitution will not suffice where no showing that party has or will have the provision applied to her).

If it be thought that this approach will insulate Section 3 from attack because nobody can, or will, have standing to bring an action, we must respond as has the Supreme Court. In the first place, "[t]he federal courts were simply not constituted as ombudsmen of the general welfare." *Valley Forge*, 454 U.S. at 487, 102 S. Ct. at 766-67. Secondly, as the Court said:

> But "[t]he assumption that if [appellants] have no standing to sue, no one would have standing, is not a reason to find standing." This view would convert standing into a requirement that must be observed only when satisfied. Moreover, we are unwilling to assume that injured parties are nonexistent simply

> because they have not joined [appellants] in their suit. The law of averages is not a substitute for standing.

*Id.* at 489, 102 S. Ct. at 767 (first alteration in original) (citation omitted). Similarly, we will not assume that, considering all of the individuals affected by all of the statutes that include the word "marriage," nobody will be able to complain. Certainly, we cannot say that there is no person who will or can bring an action when some particular statute is applied to that person in some particular way. *See, e.g.*, *Adams v. Howerton*, 673 F.2d 1036, 1041-43 (9th Cir. 1982); *In re Kandu*, 315 B.R. 123, 130 (Bankr. W.D. Wash. 2004). As it is, however, not only are Smelt and Hammer's claims excessively generalized, but also it is impossible to ascertain whether Smelt and Hammer will ever be within the zone of interest of some particular enactment.

**[19]** In fine, Smelt and Hammer lack standing to attack the constitutionality of Section 3 of DOMA.

## CONCLUSION

Smelt and Hammer have presented us with issues of veriest importance, issues which touch "the foundation of the family and of society." *Maynard*, 125 U.S. at 211, 8 S. Ct. at 729. However, they lack standing to attack the federal law—Sections 1 and 2 of DOMA—and the district court properly abstained from deciding their attack on state law.

Therefore, we affirm the district court's decision to abstain until the Marriage Cases are resolved, and the district court's decision to dismiss as to the DOMA Section 2 claim. However, we vacate its decision regarding the merits of the DOMA Section 3 claim and remand with directions to dismiss that claim.

AFFIRMED in part, VACATED in part, and REMANDED.

FARRIS, Circuit Judge, concurrence:

I concur in the result.