Charles A. COULOMBE, et al.

v.

Jerry B. JOLLY

No. CV06–1781JFW(JWJX).

United States District Court,
C.D. California.

June 14, 2006.

Plaintiff, Matthew Hale, Law Offices of Matthew Hale, Newport News, Virginia Defendants, Deputy Attorney General Martin H. Milas, Office of the California Attorney General, Los Angeles.

**PROCEEDINGS (IN CHAMBERS): ORDER DISMISSING ACTION FOR LACK OF SUBJECT MATTER JURISDICTION; AND ORDER DENYING AS MOOT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION**

WALTER, District Judge.

On March 23, 2006, Plaintiffs Charles A. Coulombe ("Coulombe"), K & K Associates, Inc. ("K & K"), Daniel T. Mullinix ("Daniel M.") and Donald R. Mullinix ("Donald M.") (sometimes collectively "Plaintiffs") filed a Complaint against Jerry B. Jolly, Director of the California Alcoholic Beverage Control Board ("Jolly"). Plaintiffs' Complaint alleges that California Business and Professions Code § 23661.2[1], which controls the shipment of wine to California from persons out of state, discriminates against out of state individuals and retail licensees in violation of the Commerce Clause. Plaintiffs bring their action pursuant to 42 U.S.C. § 1983 and seek a declaration that § 23661.2 violates the Commerce Clause and a preliminary and/or permanent injunction against the enforcement of § 23661.2.

## I. FACTUAL SUMMARY

### A. *Plaintiffs' Allegations*

Plaintiffs' Complaint alleges that on February 20, 2006, Plaintiff Coulombe, an individual over the age of 21 residing in the State of California, wrote a letter to Plaintiff K & K, a licensed wine retailer located in the State of Virginia, requesting that K & K ship to Coulombe five cases of a certain wine carried by K & K. Complaint, Exhibit ("Exh.") 1. Coulombe's letter included payment information and a copy of his driver's license to verify that he was old enough to purchase the wine. *Id.*

---

**1.** All citations to statutes hereafter are to sections of the California Business and Professions Code unless otherwise noted.

On February 21, 2006, K & K wrote back to Coulombe stating that while K & K would like to comply with Coulombe's request, K & K could not because Virginia was not a reciprocal state, and therefore K & K was barred from shipping wine to California, and because even if K & K could ship wine to California, it could not ship more than two cases. *Id.* at Exh. 2.

In addition, Plaintiffs' Complaint alleges that Daniel M., an individual over the age of 21 residing in the State of Texas, would ship more than two cases of wine per month to his parents and other residents of the State of California if it were not contrary to California law. *Id.* at ¶¶ 6, 15. Donald M., Daniel M.'s father and a resident of the State of California, "would accept and take possession" of more than two cases of wine shipped to him by an out of state individual or licensed retailer. *Id.* at ¶¶ 5,16.

Section 23661.2 provides, in pertinent part, that:

> Notwithstanding any other law, an individual or retail licensee in a state that affords California retail licensees or individuals an equal reciprocal shipping privilege, may ship, ..., no more than two cases of wine ... per month to any adult resident in this state.[2]

Section 23666 provides that any wine shipped to California in violation of § 23661.2 "shall be seized ..." and § 23670 provides that persons violating § 23661.2 are guilty of a misdemeanor. Additionally, the Twenty-first Amendment Enforcement Act, 27 U.S.C. § 122a, permits state Attorneys General to file a civil suit in federal court to seek injunctive relief barring interstate shipments of wine if such shipments violate the law of the receiving state. *See C.A. Dickerson v. Bailey,* 212 F.Supp.2d 673, 677 (S.D.Tex. 2002).

Plaintiffs contend that § 23661.2 is unconstitutional because it violates the Commerce Clause. Plaintiffs contend that § 23661.2 discriminates against out of state persons desiring to ship wine to California in three distinct ways: (1) it prohibits individuals in non-reciprocity states[3] from shipping any wine to California, but allows individuals in reciprocity states to ship wine to California; (2) it prohibits licensed retailers in non-reciprocity states from shipping any wine to California, but allows licensed retailers in reciprocity states to ship wine to California; and (3) it prohibits an individual or licensed retailer in a reciprocity state from shipping more than two cases of wine per month, but places no restriction on the amount of wine individuals and licensed retailers within California may ship to California residents. Complaint § 2(a)(c).

## B. Standing Allegations

Plaintiff Coulombe alleges that he has standing to sue "as a consumer and purchaser pursuant to *General Motors Corp. v. Tracy,* 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 ... (1997), in that he is an (a) adult consumer of wine (b) residing in California (c) who has unsuccessfully sought to purchase ... more than two cases of wine from a licensed retailer located in a Non–Reciprocity State for shipment to him in a single month."[4]

---

**2.** Section 23661.2 also requires that the shipped wine be for personal use and not for resale. Plaintiffs do not take issue with this provision of the statute and all allege that the wine they wish to ship and/or receive is for personal use and not for resale.

**3.** A non-reciprocity state is a state that does not allow individuals or licensed retailers in California to ship wine to that state. A reciprocity state is a state that grants individuals and licensed retailers in California the right to ship win to that state.

**4.** It is unclear what Plaintiffs hope to gain by their citation to *General Motors Corp. v. Tracy,* particularly in light of the fact that they fall to

Complaint ¶ 13. Additionally, Plaintiff Coulombe alleges that he "desires to and would, if it were not contrary to California law that would expose him to criminal prosecution and seizure of the wine for violation of California law, purchase ... and have shipped to him at his home in California three cases of wine or more per month from ... retailers located in Non–Reciprocity States." *Id.* at ¶ 40. Finally, Plaintiff Coulombe "desires to and would purchase three or more cases of wine in one month from a retailer located in a Reciprocity State if it were not contrary to California law that would expose him to criminal prosecution and seizure of the wine for violation of California law." *Id.* at ¶ 41

Plaintiff K & K alleges that it has standing "pursuant to *Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 ... (1991),[5] in that it is a licensed retailer of wine located in a Non–Reciprocity State that would be and is able to sell, ship, and deliver wine in an amount of or in excess of two cases per month to consumers re-

siding in California if it were not contrary to the ... laws of California to do so." Complaint ¶ 14. Additionally, Plaintiff K & K alleges that "[a] violation of the laws of the State of California by a Virginia wine retailer ... that sells, ships, and delivers wine to an adult consumer in California in violation of California law can result in the suspension or revocation of the retailer's license." *Id.* at ¶ 24.

Plaintiff Daniel M. alleges that he has standing "to bring this action pursuant to *Dennis v. Higgins, supra,* in that he is an individual residing in a Non–Reciprocity State that would ship wine, as a gift to his parents or other residents of California, in an amount of or in excess of two cases per month if it were not contrary to the ... laws of California to do so." Complaint ¶ 15. *See also id.* at ¶ 42.

Plaintiff Donald M. alleges that he has standing "to bring his action pursuant to *Dennis v. Higgins, supra,* in that he is an individual residing in California that would accept and take possession of three or more cases of wine shipped to him by an

direct the Court to the law of the case that supports Plaintiff Coulombe's contention that he has standing. In *General Motors Corp. v. Tracy,* Ohio law imposed a sales tax on all gasoline except that purchased from an Ohio regulated utility. General Motors bought gas from an out-of-state utility and filed suit challenging Ohio's tax law. The Supreme Court of Ohio held that General Motors lacked standing because it was not an out-of-state vendor. On appeal, the United States Supreme Court reversed, holding that General Motors had standing because as a customer of an out-of-state vendor, General Motors "is liable for payment of the tax and as a result presumably pays more for [its] gas" because of discrimination against out-of-state vendors. *General Motors Corp. v. Tracy,* 519 U.S. at 286, 117 S.Ct. 811. Thus, "[c]onsumers who suffer this sort of injury from regulation forbidden under the Commerce Clause satisfy the standing requirements of Article III." *Id.* By their citation to *General Motors Corp. v. Tracy,* Plaintiffs apparently attempt to demonstrate that Plaintiff Coulombe seeks redress

for a direct injury to him, as a consumer of wine unable to purchase wine from a licensed retailer in a non-reciprocity states, rather than an injury that arises as a result of the government's allegedly unlawful regulation of someone else, i.e., the licensed retailer in a non-reciprocity state, because "when the plaintiff is not himself the object of the government action ... he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

5. It is likewise unclear what Plaintiffs hope to gain by their citation to *Dennis v. Higgins,* which Plaintiffs cite without any indication of the law of the case that supports their allegation that Plaintiffs K & K, Daniel M. and Donald M. have standing. *Dennis v. Higgins,* 498 U.S. 439, 446, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) merely holds that the "the Commerce Clause confers 'rights, privileges, or immunities' within the meaning of § 1983."

individual residing or a retailer licensed in a Reciprocity or Non–Reciprocity State." Complaint ¶ 16. *See also Id.* at ¶ 43.

Notwithstanding Plaintiffs sparse standing allegations,[6] it is clear that Plaintiffs are initiating a pre-enforcement challenge to the constitutionality of § 23661.2.

## II. LEGAL STANDARD

■ "[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing." *B.C. v. Plumas Unified Sch. Dist.,* 192 F.3d 1260, 1264 (9th Cir.1999); *see* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). *See also Bernhardt v. County of Los Angeles,* 279 F.3d 862, 868 (9th Cir.2002) (affirming district court's authority to sua sponte dismiss plaintiff's action for lack of standing, but determining that the allegations in plaintiff's complaint established standing).

■ To satisfy Article III's standing requirements, Plaintiffs must establish that (1) they have suffered an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The party invoking federal jurisdiction bears the burden of establishing these elements. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (internal citations and quotations omitted) (noting that "[i]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record. And it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.... If [they] fai[l] to make the necessary allegations, [they have] no standing"). Because the elements establishing standing are not merely pleading requirements, but are an indispensable part of Plaintiffs' case, each element must be established in the same way as any other matter on which Plaintiffs' bear the burden of proof. See *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Smelt v. County of Orange,* 447 F.3d 673, 682 (9th Cir.2006). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, however, "unadorned speculation will not suffice to invoke the federal judicial power." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 44, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

■ To ascertain whether Plaintiffs have alleged an injury-in-fact in this pre-enforcement action, the Court must consider "whether the plaintiffs face a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement, or whether the alleged injury is too imaginary or speculative to support jurisdiction." *Thomas v. Anchorage Equal Rights Com'n,* 220 F.3d 1134, 1139 (9th Cir.2000) (internal citations and quotations omitted). Neither the existence of an allegedly unconstitutional statute nor a generalized threat of prosecution satisfy the

6. On May 30, 2006, Plaintiffs filed a Motion for Summary Judgment and Permanent injunction ("Motion"). As a result, Plaintiffs had ample opportunity to set forth facts to support their standing allegations, but Plaintiffs failed to do so.

injury-in-fact requirement. *Id.* Although courts do not require plaintiffs to await arrest or prosecution before challenging the constitutionality of a statute, "the threat of enforcement must at least be 'credible,' not simply 'imaginary or speculative'." *Id.* at 1140. *See also Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (recognizing that "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement"). "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Thomas v. Anchorage Equal Rights Com'n,* 220 F.3d at 1140 (quoting *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

In evaluating the genuineness of a claimed threat of prosecution, the Court looks to whether Plaintiffs "have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Thomas v. Anchorage Equal Rights Com'n* 220 F.3d at 1139.

## III. DISCUSSION

Plaintiffs do not have standing to bring this suit because they have not set forth any allegations or facts establishing that they have suffered an injury-in-fact.

Plaintiffs have failed to allege a "concrete plan" to violate § 23661.2. Plaintiffs allege that they would either ship, or have shipped to them, more than two cases of wine on a monthly basis, if doing so were not against the law. *See* Complaint ¶¶ 14–16, 40–41. Yet, Plaintiffs fail to allege any of the specifics of their plan; they fail to provide the who, what, where, when and how they intend to effectuate their plan. "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Thomas v. Anchorage Equal Rights Com'n* 220 F.3d at 1139. *See also San Diego County Gun Rights Committee v. Reno* 98 F.3d 1121, 1127 (9th Cir.1996) (finding that plaintiffs allegations that "they wish and intend to" violate the law insufficient to establish a "concrete plan" and noting that "the Supreme Court has observed, [s]uch some day intentions-without any description of concrete plans, or indeed even any specification of *when* the some day will be-do not support a finding of the 'actual or imminent' injury that our cases require.")

Even if Plaintiffs allegations regarding their plan to violate § 23661.2 were sufficient however, Plaintiffs have not alleged that they face any threat, let alone a credible threat, of prosecution for violation of § 23661.2. Plaintiff Coulombe merely alleges that he "would be" exposed to criminal prosecution and seizure if he were to have shipped to his home in California more than three cases of wine per month from persons outside of California, whether in non-reciprocity or reciprocity states. *See* Complaint ¶¶ 40–43. Similarly, Plaintiff K & K alleges that violation of California law "can result" in suspension or revocation of its license. *Id.* at ¶ 24.[7] Neither

---

7. Notably, K & K would have to establish that a credible threat exists that the laws of the State of Virginia would result in the suspension or revocation of its license for its violation of California law, attenuating even further K & K's contention that this Court has standing to adjudicate K & K's claims. *See* Va.Code Ann. §§ 4.1–225(c), 4.1–324(A)(4) and (B).

Daniel M. or Donald M. even attempt to allege an injury-in-fact as they fail to assert any threat at all. Daniel M. and Donald M. merely allege that they would ship to California, or receive in California, more than two cases of wine per month if it were not against the law to do so. *Id.* at ¶¶ 15–16, 42–43.

Plaintiffs do not allege that they have ever been threatened with prosecution, that they would likely be prosecuted or even that prosecution is a remote possibility. Additionally, Plaintiffs fail to allege whether Defendant Jolly has warned them against violating § 23661.2 or whether Defendant Jolly has threatened to initiate proceedings if they violate § 23661.2. Finally, Plaintiffs have failed to set forth any allegations regarding the history of past prosecution or enforcement under § 23661.2. "[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. at 298, 99 S.Ct. 2301 (quoting *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

Because Plaintiffs have failed to allege that they have suffered an injury-in-fact, they lack standing to bring this action.[8]

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' Complaint is **DISMISSED without prejudice.** On June 8, 2006, the Court took under submission Plaintiffs' Motion for Summary Judgment and Permanent Injunction filed on May 30, 2006. In light of the Court's order dismissing this action, Plaintiffs' Motion for Summary Judgment and Permanent Injunction is **DENIED as moot** and the Scheduling Conference set for June 19, 2006 is hereby vacated.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

---

**8.** Having determined that Plaintiffs have failed to allege an injury-in-fact, the Court need not examine whether Plaintiffs have suf-ficiently alleged the additional elements necessary to satisfy Article III's standing requirement.